UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DAVID HIGHTOWER, )
)
    Plaintiff, )
)
vs. ) No. 4:14-CV-1959 (CEJ)
)
CITY OF ST. LOUIS, et al., )
)
    Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on the joint motion of defendants Dorothy Stewart and Anthony Davis and the separate motion of defendant Richard Edwards for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] Plaintiff has responded in opposition to both motions, and the issues are fully briefed.

### I. Background

Plaintiff David Hightower brings this 42 U.S.C. § 1983 action against defendant Richard Edwards, a St. Louis police officer, and defendants Anthony Davis and Dorothy Stewart, nurses at the St. Louis City jail. In Count I, plaintiff claims that Edwards used excessive force in arresting him on June 19, 2014. According to plaintiff, the force used by Edwards resulted in fracturing plaintiff's shoulder. In Count II, plaintiff claims that Davis and Stewart were deliberately indifferent to plaintiff's injuries after he was brought to the jail, and as a result plaintiff suffered extreme pain and was subjected to assault and verbal abuse by

---

[1] After defendant Edwards filed his first motion for summary judgment, the plaintiff filed a third amended complaint adding a claim of excessive use of force by Edwards, in violation of the Fourth Amendment. [Doc. #76]. Edwards thereafter filed the instant motion for summary judgment directed to plaintiff's third amended complaint. Therefore, the first motion for summary judgment is moot. Also, the Court will consider the summary judgment motion of defendants Stewart and Davis as directed toward Count II of the third amended complaint.

other inmates.  In Count III, plaintiff asserts a state law claim of intentional infliction of emotional distress against all three defendants.[2]

## II. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences to be drawn from the underlying facts.  AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  If the moving party meets its burden, the non-moving party may not rest on the allegations of its pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Gannon Int'l, Ltd. v. Blocker, 684 F.3d 785, 792 (8th Cir. 2012); Gibson v. Am. Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita, 475 U.S. at 587).

---

[2] Edwards moves for summary judgment on plaintiff's deliberate indifference claim.  In the third amended complaint, plaintiff refers to the actions of "all defendants" in asserting this claim.  However, the factual allegations pertaining to deliberate indifference concern only defendants Davis and Stewart.  Also, plaintiff's response to Edwards' summary judgment motion does not address the deliberate indifference claim.  Therefore, the Court does not consider the deliberate indifference claim to be directed to Edwards.

### III. Discussion

#### A. Excessive Force

In Count I of the third amended complaint, plaintiff claims that defendant Edwards used excessive force in arresting plaintiff on June 19, 2014, in violation of the Fourth and Fourteenth Amendments. A claim that a law enforcement officer used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen is properly analyzed under the Fourth Amendment's objective reasonableness standard, rather than the Fourteenth Amendment's substantive due process standard. Graham v. Connor, 490 U.S. 386, 395 (1989); Dennen v. City of Duluth, 350 F.3d 786, 790 (8th Cir. 2003). Therefore, Edwards is entitled to judgment as a matter of law on the Fourteenth Amendment claim in Count I.

The undisputed evidence is that plaintiff ran from police officers as they were attempting to arrest him for a parole violation. An officer deployed a Taser, and plaintiff fell to the ground. Plaintiff testified that at that point he stopped resisting arrest and "[s]omebody held me down, put my shoulder around my back and twisted my arm all the way up and put me in handcuffs." Pl.'s Dep. 56:175–20, 21-24 [Doc. #83-2]. Plaintiff sustained a non-dislocated fracture of his left shoulder.

In support of his motion, Edwards submitted a statement of uncontroverted material facts, excerpts from plaintiff's deposition, and several documents. He did not submit an affidavit or other sworn statement. However, Edwards asserts that the alleged twisting of plaintiff's arm "occurred before he was secured in handcuffs," and that plaintiff ultimately pled guilty to a charge of resisting arrest. Def't. Statement of Uncontroverted Facts, ¶¶ 6 and 8 [Doc. #83-1].

"A use of force is unlawful under the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances confronting law enforcement officers at the time of the incident." Procknow v. Curry, No. 15-2046, 2016 WL 3383776, at *3 (8th Cir. June 20, 2016) (citing Peterson v. Kopp, 754 F.3d 594, 600 (8th Cir. 2014)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. This calculus allows "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396–97. "Circumstances relevant to the reasonableness of the officer's conduct include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (quoting Graham, 490 U.S. at 396). "A court may also evaluate the extent of the suspect's injuries, as well as standard police procedures." Mann v. Yarnell, 497 F.3d 822, 826 (8th Cir. 2007) (internal citations omitted); see Chambers v. Pennycook, 641 F.3d 898, 906 (8th Cir. 2011) ("The degree of injury is certainly relevant insofar as it tends to show the amount and type of force used."). An officer's underlying intent or motivation is not relevant to an objective reasonableness analysis. Graham, 490 U.S. at 397.

The Court cannot determine on the basis of the present record whether twisting plaintiff's arm to the point of fracturing his shoulder was a reasonable use of force after plaintiff ceased running from the police and was no longer resisting

4

arrest. Thus, it cannot be said that Edwards is entitled to judgment as a matter of law on the excessive force claim.

Edwards argues that he is entitled to qualified immunity. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "To overcome the defense of qualified immunity the plaintiff must show: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" Meehan v. Thompson, 763 F.3d 936, 940 (8th Cir. 2014) (quoting Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010)). As to the first prong, "whether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law." Lambert v. City of Dumas, 187 F.3d 931, 935 (8th Cir. 1999). "The issue of qualified immunity, however, is frequently intertwined with unresolved factual questions." Littrell v. Franklin, 388 F.3d 578, 585 (8th Cir. 2004).

Viewing the facts in the light most favorable to plaintiff, Edwards held plaintiff down on the ground and twisted his arm with enough force to fracture plaintiff's shoulder. Even if plaintiff was not handcuffed at the time, he had been disabled by the Taser and was not resisting arrest. When plaintiff was arrested in June 2014, the law in the Eighth Circuit was clearly established that a police officer's use of excessive force in effecting an arrest violates the Fourth Amendment. See Kukla v. Hulm, 310 F.3d 1046, 1050 (8th Cir. 2002) (right to be

free from excessive force clearly established; genuine issue of fact precluded summary judgment when defendant police officer twisted plaintiff's arm, causing injury to his collar bone, shoulder, neck and wrist under circumstances indicating that plaintiff was not resisting arrest). The Court finds that Edwards has not demonstrated his entitlement to qualified immunity.

### B. Deliberate Indifference

In Count II of the third amended complaint, plaintiff alleges that defendants Stewart and Davis were deliberately indifferent to his serious medical needs, in violation of the Eighth and Fourteenth Amendments.

After plaintiff was arrested, police officers transported him to the jail where he encountered an unnamed nurse who told the officers that he needed to be taken to a hospital. Plaintiff testified that he was unable to move his arm at that point. He was not taken to the hospital, but during the early morning hours of June 20, 2014, he underwent an intake screening conducted by Davis. Plaintiff testified that he was in extreme pain and told Davis about his shoulder injury. He further testified that his condition was not noted by Davis. However, this testimony is contradicted by an "Intake and Receiving Screening" form that bears plaintiff's and Davis' signatures. Defs.' Ex. C, p. 11–13 [Doc. # 63-4]. On the form, Davis noted that plaintiff had a "dislocated [left upper extremity]." Id. at p. 13. Also, Davis noted that there was no indication that plaintiff needed an urgent or emergent medical referral. The form states that Davis explained the jail's access to care and grievance process to plaintiff. Plaintiff signed the form indicating that the information on it was correct. Id.; Pl.'s Dep. 21:4–23:13 [Doc. #63-5]. According to plaintiff, Davis stated that he would "see medical once [plaintiff] got upstairs."

6

Pltf. Dep. p. 20: [Doc. # 63-5]. There is no evidence that plaintiff and Davis had any further contact after the intake assessment was completed.

Plaintiff testified that he first submitted a medical request or "kite" when he went upstairs. Pl.'s Dep. 26:6–27:6 [Doc. #63-5]. On June 23, 2014, plaintiff was seen by nurse Stewart for a health assessment history and physical. Plaintiff told Stewart about his left shoulder during the assessment. The form Stewart completed during the assessment indicated that plaintiff had right-hand weakness, but did not reflect any complaints of or an injury to his left shoulder. Defs.' Ex. C, p. 9 [Doc. #63-4]. Plaintiff concedes that when he saw Stewart, his pain "wasn't as bad as when [he] first got there," and he assessed his level of pain at that time as five out of ten. Pl.'s Dep. 24:17–25:16 [Doc. #63-5]. Stewart checked a box on the form indicating that plaintiff had had the opportunity to ask questions during the health assessment. Plaintiff acknowledges that he signed the form, but he denies having had the opportunity to ask questions before doing so.

Plaintiff alleges that between June 20 and June 23, 2014, he was confined to an overcapacity holding cell where he had to sleep on a concrete floor. Plaintiff testified that other inmates verbally harassed him because he was from the suburbs. Pl.'s Dep. 47:1–8 [Doc. #63-5]. Plaintiff alleges that because of his pain and inability to move his left arm to defend himself while he was at the city jail, he was physically assaulted, verbally abused, and subjected to theft and other indignities at the hands of other inmates.

After plaintiff went to a holding cell upstairs, he submitted a medical request complaining that his shoulder was dislocated and he could not sleep. Defs.' Ex. C, p. 38 [Doc. #63-4]; Pl.'s Dep. 26:6–27:6, 64:16–65:11 [Doc. #63-5]. On July 2,

7

2014, plaintiff was seen and examined by Paul Geiger, M.D., at the jail. In his declaration, Dr. Geiger states that he has diagnosed and treated fractured shoulders during his 50 years of practicing internal medicine. Defs.' Ex. A ¶¶ 3–4 [Doc. #63-2]. During the examination, plaintiff complained of pain in his left shoulder. Dr. Geiger assessed that plaintiff had a contusion and healing abrasion on the top of his left shoulder with good range of motion. Defs.' Ex. C, p. 39 [Doc. #63-4]. He determined that plaintiff's left shoulder pain was non-life threatening and did not require urgent or emergent medical treatment. Defs.' Ex. A ¶ 11 [Doc. #63-2]. Dr. Geiger opined that plaintiff did not need to be sent to the hospital to be treated for his left shoulder on June 20, and that plaintiff's shoulder was healing on July 2. Defs.' Ex. A [Doc. #63-2]. Dr. Geiger ordered an x-ray of plaintiff's left shoulder and gave plaintiff Tylenol for comfort. Defs.' Ex. C, pp. 16, 39 [Doc. #63-4].

Plaintiff underwent an x-ray on July 9, 2014, which indicated a non-displaced fracture of the proximal shaft of the humerus. Defs.' Ex. C, p. 31 [Doc. #63-4]. In a declaration, Dr. Geiger opined that a non-displaced fracture of the shoulder has an 85 percent chance of healing on its own. Defs.' Ex. A ¶ 14 [Doc. #63-2]. The next day, July 10, Dr. Geiger again examined plaintiff's left shoulder and reviewed his x-ray. Plaintiff testified that Dr. Geiger expressed surprise that he was able to function given his condition ("[H]e was just like he don't believe I was walking around like that.") Pl.'s Dep. 29:14–23 [Doc. #63-5]. During the examination, Dr. Geiger prescribed plaintiff a sling and Motrin for comfort. Defs.' Ex. C, pp. 16, 39 [Doc. #63-4].

During his confinement in the city jail, it is undisputed that plaintiff received the following pain medications: Tylenol, 325 milligrams, on July 2, 2014 for ten days; Motrin, 400 milligrams, on July 10, 2014 for 15 days; Tramadol, 650 milligrams, on August 15, 2014 for 30 days; and Ibuprofen, 400 milligrams, on September 23, 2014 for seven days. Defs.' Ex. C, pp. 15–16 [Doc. #63-4].

On September 21, 2014, plaintiff submitted a medical request indicating that his arm still hurt in the morning after he had slept on it and asking to be placed back on Tramadol. Defs.' Ex. C, p. 36 [Doc. #63-4]; Pl.'s Dep. 35:20–36:10. Plaintiff testified that his arm had "basically already healed up" at that point and it only hurt in the morning. Pl.'s Dep. 37:16–38:24 [Doc. #63-5]. Plaintiff was transferred to the St. Louis County jail on February 25, 2015. Plaintiff testified that by that time his pain "wasn't too bad." Pl.'s Dep. 40:12–15 [Doc. #63-5]. At the county jail, plaintiff underwent an x-ray of his left shoulder and was told "it didn't show anything." Pl.'s Dep. 40:20–41:3 [Doc. #63-5]. A physician or nurse at the county jail told plaintiff he needed to exercise to build muscle around the location of his injury. Plaintiff admitted that he had only been exercising his shoulder and arm "a little" and that he "didn't really have much time for it." Pl.'s Dep. 41:18–23 [Doc. #63-5].

Plaintiff claims that multiple requests for medical help were ignored by correctional officers and medical personnel at the St. Louis City Justice Center. The medical records defendants disclosed contain copies of five kites plaintiff submitted, bearing dates between August 14 and November 18, 2014. Defs.' Ex. C, pp. 36–38, 40–43 [Doc. #63-4]. Two of these kites contained requests for medical treatment which it is undisputed that plaintiff received. Plaintiff denies that these

9

kites represent his only attempts to obtain medical assistance for his shoulder. However, plaintiff submitted no evidence, testimonial or otherwise, regarding any other unanswered medical requests.

"It is clear that a pretrial detainee has a constitutional right to adequate medical care while in custody." Dadd v. Anoka Cty., No. 15-2482, 2016 WL 3563424, at *4 (8th Cir. June 30, 2016). "The constitutional obligation to provide medical care to those in custody may be violated when officials 'intentionally deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)). Even though plaintiff's right to medical care arises under the Due Process Clause of the Fourteenth Amendment, the Eighth Circuit applies "the deliberate-indifference standard that governs claims brought by convicted inmates under the Eighth Amendment." Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir. 2014).

Deliberate indifference involves both an objective and a subjective analysis. Id. The objective component requires a plaintiff to demonstrate an objectively serious medical need. Id. "A medical need is objectively serious if it either has been 'diagnosed by a physician as requiring treatment' or is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Scott v. Benson, 742 F.3d 335, 340 (8th Cir. 2014) (quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). When a deliberate indifference claim is based on a delay in medical treatment, the objective seriousness of the deprivation is measured "by reference to the *effect* of delay in treatment." Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005). "To establish this effect, the inmate 'must place verifying medical evidence in the record to establish the detrimental effect of delay in

medical treatment[.]'" Id. (quoting Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)). When an inmate submits "evidence documenting his diagnosis and treatment, [but] offer[s] no evidence establishing that any delay in treatment had a detrimental effect," the inmate fails to raise a genuine issue of fact on an essential element of his claim. Id.

"The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009). This showing requires a mental state "akin to criminal recklessness." Scott, 742 F.3d at 340 (quoting Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006)). Thus, the prisoner "must show more than negligence, more even than gross negligence." Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008) (quoting Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)). "[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation." Id. A prison official or medical provider may be "found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 844 (1994)). "When evaluating whether an actor deliberately disregarded a risk, [courts] consider '[the official's] actions in light of the information he [or she] possessed at the time, the practical limitations of his [or her] position and alternative courses of action that would have been apparent to an official in that position.'" Letterman v. Does, 789 F.3d 856, 862 (8th Cir. 2015) (quoting Gregoire v. Class, 236 F.3d 413, 419 (8th Cir. 2000)).

A review of the record demonstrates that there is no genuine dispute of material fact regarding the constitutionality of Davis and Stewart's conduct in

response to plaintiff's medical needs. Assuming that plaintiff presented an objectively serious medical need, he has not demonstrated that Davis or Stewart deliberately disregarded this need. The evidence in the record establishes, at most, plaintiff's mere disagreement with the nurses' treatment decisions. Davis conducted a medical screening of plaintiff during his intake and determined that he was not in need of an urgent or emergent medical referral. Dr. Geiger later treated plaintiff's non-displaced shoulder fracture with a sling and over-the-counter medication and confirmed that plaintiff did not need emergency medical care on June 20. Davis informed plaintiff that he would receive further non-emergent medical care upstairs and explained the jail's access to medical care policy. Plaintiff admits he signed the form indicating that the information on the form was correct. It is undisputed that after plaintiff submitted written medical requests, he received medical treatment, including pain medication, in response. Stewart conducted a health assessment and physical three days after plaintiff's arrival at the jail. The form Stewart completed did not reflect any complaints of or an injury to plaintiff's left shoulder, and plaintiff concedes signing the form. Plaintiff also concedes that by the time Stewart saw him his pain had lessened. These undisputed facts do not establish deliberate indifference to plaintiff's serious medical needs. Rather, the evidence shows that both nurses responded reasonably to plaintiff's needs.

To the extent that plaintiff complains that defendants Stewart and Davis failed to protect him from other inmates' assaults, "[p]rison officials have a duty to protect prisoners from violence at the hands of other prisoners," Chavero-Linares v. Smith, 782 F.3d 1038, 1041 (8th Cir. 2015), but "[o]f course, [they] do not commit a constitutional violation every time one prisoner attacks another." Young v. Selk,

508 F.3d 868, 871–72 (8th Cir. 2007). To prove deliberate indifference for a failure to protect a prisoner from other inmates, the prisoner must prove the official acted with "reckless disregard of the known risk" to his safety. Holden v. Hirner, 663 F.3d 336, 341 (8th Cir. 2011) (quoting Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998)). Such reckless disregard is demonstrated only where an official "actually knows of the substantial risk and fails to respond reasonably to it." Nelson v. Shuffman, 603 F.3d 439, 446 (8th Cir. 2010) (quoting Young, 508 F.3d at 872). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not violate the Eighth Amendment. Farmer, 511 U.S. at 838. Also, an official with knowledge of such a risk incurs no "liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844. Plaintiff has presented no evidence demonstrating that either Davis or Stewart actually knew that other inmates posed a substantial risk to plaintiff's health or safety, or that they failed to respond reasonably to any risk of which they were aware. As such, defendants Davis and Edwards are entitled to judgment as a matter of law on plaintiff's claim of deliberate indifference to his serious medical needs.

### C. Intentional Infliction of Emotional Distress

Plaintiff asserts a state law claim of intentional infliction of emotional distress against all of the defendants in Count III. Under Missouri law, to establish a claim of intentional infliction of emotional distress: "(1) the defendant's conduct must be outrageous or extreme; (2) the defendant must act intentionally or recklessly; (3) there must be extreme emotional distress that results in bodily harm; (4) caused by the defendant's conduct; and (5) the conduct must be intended solely to cause

13

extreme emotional distress to the victim." Crow v. Crawford & Co., 259 S.W.3d 104, 119 (Mo. Ct. App. 2008).

### 1. Edwards

Edwards first argues that he is protected from plaintiff's intentional infliction of emotional distress claim by official immunity. "Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts." Davis v. Lambert-St. Louis Int'l Airport, 193 S.W.3d 760, 763 (Mo. banc 2006). "Whether an act is discretionary or ministerial depends on the 'degree of reason and judgment required' to perform the act." Id. (quoting Kanagawa v. State By & Through Freeman, 685 S.W.2d 831, 836 (Mo. banc 1985)). "An act is discretionary when it requires 'the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued.'" Id. (quoting Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo. banc 1984)). "Conversely, a ministerial function is 'of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.'" Id. (quoting Rustici, 673 S.W.2d at 769). The Court finds that Edwards' conduct in chasing and arresting a fleeing felon was discretionary. See Blue v. Harrah's N. Kan. City, LLC, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005) ("Deciding whether or not to arrest someone is a matter of discretion—the officer must decide what course should be pursued based on the circumstances at hand."); see also Southers v. City of Farmington, 263 S.W.3d 603, 618–19 (Mo. banc 2008) ("The official immunity

doctrine . . . appl[ies] if [police] officers are responding to an emergency."); <u>DaVee v. Mathis</u>, 812 S.W.2d 816, 827 (Mo. Ct. App. 1991) ("This court has already determined that the officers, in executing the search warrant, were performing discretionary acts."). <u>But see</u> <u>Rustici</u>, 673 S.W.2d at 769 ("With all due appreciation of the practical difficulties encountered in the application of [the discretionary/ministerial] distinction, it is nevertheless difficult to conceive of an act which is more circumscribed by law, and less susceptible to individual initiative, than is the arrest of a citizen by a peace officer.").

Thus, Edwards' discretionary acts are protected by official immunity, unless the conduct was "willfully wrong or done with malice or corruption." <u>Southers</u>, 263 S.W.3d at 610; <u>Davis v. Bd. of Educ.</u>, 963 S.W.2d 679, 688 (Mo. Ct. App. 1998) ("[O]fficial immunity is a qualified immunity and does not apply to those discretionary acts done in bad faith or with malice."); <u>see also</u> <u>State ex rel. Twiehaus v. Adolf</u>, 706 S.W.2d 443, 446 (Mo. banc 1986) ("[I]t is generally held that official immunity applies to all discretionary acts except those done in bad faith or with malice."). Bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury. <u>Adolf</u>, 706 S.W.2d at 447. A defendant acts with malice by wantonly doing that which a person of reasonable intelligence would know to be contrary to his or her duty and which the defendant intends to be prejudicial or injurious to another. <u>Id.</u> (quoting <u>Grad v. Kaasa</u>, 312 S.E.2d 888, 890 (N.C. 1984)). Bad faith "embraces more than bad judgment or negligence." <u>Id.</u> (quoting <u>Catalina v. Crawford</u>, 483 N.E.2d 486, 490 (Ohio Ct. App. 1984)). "It imports a dishonest purpose, moral obliquity, conscious wrongdoing,

15

breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Id. (quoting Catalina, 483 N.E.2d at 490).

Plaintiff has presented no evidence that would allow a reasonable jury to infer that Edwards acted in bad faith or with malice in arresting him. Thus, the Court finds that Edwards is shielded by official immunity against plaintiff's state law claim of intentional infliction of emotional distress.

Furthermore, even if the Court were to find Edwards' actions in arresting plaintiff to be ministerial rather than discretionary, plaintiff has not presented sufficient evidence for a reasonable jury to find that these actions were extreme or outrageous, as required to establish a claim of intentional infliction of emotional distress under Missouri law. See Polk v. INROADS/St. Louis, Inc., 951 S.W.2d 646, 648 (Mo. Ct. App. 1997) ("[T]he test adopted by Missouri courts for actionable conduct is that the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (internal quotations omitted)). Because plaintiff has not established that a jury could find that Edwards' conduct was malicious and intentional, let alone extreme and outrageous, Edwards is entitled to judgment as a matter of law on plaintiff's intentional infliction of emotional distress claim in Count III. See id. ("The defendant's conduct must be more than malicious and intentional . . . . It is for the court to determine, in the first instance, whether the defendant's conduct may be reasonably be regarded as so extreme and outrageous as to permit recovery[.]" (internal quotations omitted)).

**2. Stewart and Davis**

The facts underlying plaintiff's intentional infliction of emotional distress claim against Stewart and Davis are identical to those alleged and established in support of plaintiff's § 1983 deliberate indifference claim. However, Stewart and Davis have not moved for summary judgment on the claim of intentional infliction of emotional distress. Entry of summary judgment is appropriate only when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Federal Rule of Civil Procedure 56(f)(2) provides that a district court may grant summary judgment on grounds not raised by a party, but only after giving notice and a reasonable time to respond. See also Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."). The Eighth Circuit has "repeatedly held" that a district court commits reversible error by granting summary judgment on an issue not raised or discussed by the parties if the losing party did not have notice and an opportunity to respond. Montgomery v. City of Ames, 749 F.3d 689, 697 (8th Cir. 2014); Liberty Mut. Ins. Co. v. Pella Corp., 650 F.3d 1161, 1178 (8th Cir. 2011) (quoting Heisler v. Metro. Council, 339 F.3d 622, 631 (8th Cir. 2003)); see Miller v. Mo. Dep't of Social Servs. Div. of Youth Servs., No. 4:13-CV-1102 (NAB), 2015 WL 2238822, at *6 (E.D. Mo. May 12, 2015) ("In this circuit, '[i]t is fundamentally unfair to the nonmoving party to require her to address issues not addressed by the moving party in anticipation that the district court might rely on some unidentified issue to grant the motion.'" (quoting Heisler, 339 F.3d at 631)).

In concluding that Stewart and Davis are entitled to summary judgment on plaintiff's deliberate indifference claim, the Court determined that no reasonable jury could find that defendants possessed a mental state akin to criminal recklessness in response to plaintiff's medical needs. Likewise, based on the undisputed evidence in the record, the Court is inclined to conclude that no reasonable jury would find that Davis and Stewart's conduct was outrageous or extreme or that they acted intentionally or recklessly to cause plaintiff extreme emotional distress. Crow, 259 S.W.3d at 119; see Polk, 951 S.W.2d at 648 (stating that for a defendant's conduct to be "extreme and outrageous" for purposes of an intentional infliction of emotional distress claim, the conduct "must be more than malicious and intentional").

In light of its analysis of the deliberate indifference claim, the Court is considering entry of summary judgment in favor of Stewart and Davis on plaintiff's intentional infliction of emotional distress claim. Before a final decision is made, plaintiff will be given the opportunity to object to the entry of summary judgment for defendants Davis and Edwards on Count III. See Fed. R. Civ. P. 56(f).

\* \* \* \* \*

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendants Dorothy Stewart and Anthony Davis for summary judgment [Doc. #62] is **granted**.

**IT IS FURTHER ORDERED** that plaintiff shall have until **November 21, 2016,** to file a written opposition to the entry of summary judgment in favor of defendants Dorothy Stewart and Anthony Davis on Count III of the third amended complaint.

**IT IS FURTHER ORDERED** that the motion of defendant Richard Edwards for summary judgment on plaintiff's third amended complaint [Doc. #83] is **granted as to plaintiff's Fourteenth Amendment excessive use of force claim and is denied in all other respects.**

**IT IS FURTHER ORDERED** that the motion of defendant Richard Edwards for summary judgment on plaintiff's second amended complaint [Doc. #64] is **moot**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of November, 2016.